**STATE of Utah, Plaintiff and Respondent,**

v.

**Todd Emmit TURNER and Darin Brent McEwan, Defendant and Appellant.**

No. 860155–CA.

Court of Appeals of Utah.

May 4, 1987.

Elliott Levine, Salt Lake City, for appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., for the State.

Edward T. Wells, Bottum & Wells, P.C., Salt Lake City, for defendant.

Terry Christiansen, Asst. County Atty., Coalville.

Before JACKSON, DAVIDSON and GREENWOOD, JJ.

OPINION

JACKSON, Judge:

Todd Emmit Turner appeals his 1985 jury convictions for burglary, a second degree felony under Utah Code Ann. § 76–6–202(1) (1978) and theft, a third degree felony under Utah Code Ann. § 76–6–404 (1978). Turner drove a car down Parley's Canyon on April 8, 1985, accompanied by his co-defendant, Darin Brent McEwan. A

Utah Highway Patrol officer stopped them for excessive speed. Turner was arrested on the scene for driving under the influence of alcohol. An inventory search of the car yielded three TV sets and one tape deck. Law enforcement officers had that day received reports that similar personal property was missing from condominiums in Park City. Neither Turner nor McEwan tried to explain, at any time, how they obtained possession of the property. At trial, Turner did not testify in his own behalf or present any defense. His appeal raises the following issues:

(1) Did the jury instructions shift the burden of proof of innocence to Turner, thereby violating his fourteenth amendment federal constitutional right to have the State prove beyond a reasonable doubt every element of the offenses charged?

(2) If so, was the constitutional error harmless in this case?

(3) Can Turner challenge the jury instructions for the first time on appeal?

We hold that the erroneous use of unconstitutional instructions was not harmless. For that reason, we reverse Turner's convictions and remand for a new trial.

## I. JURY INSTRUCTIONS

The court charged the jury with twenty-one instructions. Instructions 1 through 15 were standard instructions that advised the jury several times that Turner's pleas of not guilty "cast upon the prosecution the burden of proving beyond a reasonable doubt all of the elements of the crimes charged." [1] The next four instructions were:

Instruction No. 16

If weaker and less satisfactory evidence is offered by a party, when it was within his power to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust.

Instruction No. 17

A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof.

Possession of property recently stolen, when no satisfactory explanation of such possession is made, shall be deemed prima facie evidence that the person in possession stole the property.

Instruction No. 18

Possession of recently stolen property which could have been obtained only by a burglarious entry into a building, when no satisfactory explanation of such possession is made, shall be deemed prima facie evidence that the person in possession committed the burglary.

Instruction No. 19

The term "prima facie" as used herein means, at first sight; on the first appearance; on the face of it; so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary.

Instruction 20 was a brief warning to jurors not to let the punishment for the crimes charged affect their verdict. The last instruction told the jurors they were to return a verdict of "guilty" or "not guilty" on each count against each defendant.

■ In this case, Turner's not guilty plea and the due process clause of the fourteenth amendment cast the burden of proof directly upon the prosecution. Instructions 16 to 19 relieved the State of that burden. Two months after Turner's trial, the Utah

---

**1.** Instructions 1 through 9 were boilerplate explanations of the jurors' duties to decide the case on the evidence, to determine the facts, and to follow the law as the court stated it. The defendants' privilege not to testify was explained in No. 7. The prosecution's "burden of proving beyond a reasonable doubt all of the elements of the crimes charged" was recited in Instructions 7 and 9, and repeated in Instructions 10 and 11, which listed the essential facts to be proven in a theft or burglary. Instruction 12 defined "reasonable doubt," and No. 13 explained what actions constitute a burglary. Instruction 14 addressed the issue of a witness' identification of a defendant. No. 15 defined the following terms that appear in the theft and burglary statutes: "obtains," "property," "exercises unauthorized control," "property of another," and "purpose to deprive."

Supreme Court held the exact language of Instruction 17 to be unconstitutional in a theft prosecution, *State v. Chambers*, 709 P.2d 321 (Utah 1985), and in a burglary prosecution, *State v. Pacheco*, 712 P.2d 192 (Utah 1985). The parallel language of Instruction 18 on burglary is likewise unconstitutional.

In *Chambers*, the Court stated:

In this case the trial court instructed the jury that possession of recently stolen property, in the absence of a satisfactory explanation, is "prima facie" evidence of theft by the person in possession of the property. Such an instruction, nevertheless, fits within the *Franklin* definition of a mandatory rebuttable presumption: "A [mandatory] rebuttable presumption ... requires the jury to find the element unless the defendant persuades the jury that such a finding is unwarranted."

*State v. Chambers*, 709 P.2d at 326, quoting *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 1971 n. 2, 85 L.Ed.2d 344 (1985). In *Franklin*, the United States Supreme Court held unconstitutional the use of a mandatory rebuttable presumption in a criminal jury instruction.[2] *Franklin* extended the prior decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which held that an instruction with an apparent irrebuttable presumption bearing on a criminal defendant's malice was unconstitutional.

In addition, the definition of "prima facie" in Instruction 19 above is identical to Instruction 19 in *Chambers*. There the Court emphasized the definitional words "a fact presumed to be true unless disproved" and stated:

The use of the word "disproved" could well have indicated to a juror that the defendants were required to disprove guilt. An instruction which could be reasonably understood to relieve the State of its burden of proof is constitutionally defective. *See Sandstrom*, 442 U.S. 510, 524, 99 S.Ct. at 2459. Thus, the use of this instruction would itself have required reversal based on principles dictated by *Sandstrom* and without refer-

ence to the stricter application prescribed by *Franklin*.

*State v. Chambers*, 709 P.2d at 326.

We hold that *Chambers* and *Pacheco* are dispositive of whether Instructions 17, 18, and 19 herein are constitutional. Those instructions violate due process because they relate to the issue of guilt and relieve the State of its burden of proof. We reiterate the admonition in *Chambers* that the language of Utah Code Ann. § 76–6–402(1) (1978), parroted in Instructions 17 and 18, should not be used in any form to instruct juries in theft and burglary cases. *State v. Chambers*, 709 P.2d at 327.

## II. HARMLESS ERROR ANALYSIS

■ Turner elected to remain silent at all times. His not guilty plea was a denial of the charges. He should not be penalized in any way for asserting this constitutional right. Instruction 16 was inserted between the standard instructions and the defective instructions and could have been viewed by the jury as an unfavorable comment on Turner's silence. In any event, No. 16 introduced the improper presumptions that became the next to last word to the jury. In this context, the earlier instructions could not and did not cure the fatal defects.

"The influence of the trial judge on the jury is necessarily and properly of great weight," ... and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptional and unilluminating abstract charge.

*Bollenbach v. United States*, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946) (citations omitted).

The contradiction between Instructions 1 to 15 and Instructions 17 to 19 is obvious. "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity. A reviewing court has no way of knowing which of the two irreconcilable

2. We note that Turner's trial was on August 8 and 9, 1985, after the decision in *Franklin*.

instructions the jurors applied in reaching their verdict." *Francis v. Franklin*, 105 S.Ct. at 1975 (footnote omitted).

The prejudicial effect of the presumptions created by the jury instructions is especially clear in light of the slim evidentiary basis for Turner's convictions. The fact of mere possession was the only direct evidence against Turner. The state did not produce any evidence that Turner stole anything. Circumstantial evidence connecting Turner with the actual burglaries and thefts was virtually nonexistent. The prosecution offered testimony of a phone call as the evidence "connecting" Turner to the crimes. The phone call was placed by co-defendant McEwan in the presence of Kimmer Eisenhart, an employee at the condominium theft site. The person receiving the call was not identified. On direct examination, Eisenhart was asked what she heard Darin McEwan say on the phone. Answer:

> That there was a police officer outside. There had been a parking lot fender bender, and there was a police officer outside, and that he was sure that they would be running the numbers on the TV's, and that they should get together, and he was sure that they were going to be arrested.

At the end of the call, McEwan told Eisenhart that he had been stealing from the condos for some time, but he wouldn't get caught because he didn't take the "stuff" to Salt Lake. He took it to Ogden.

The subject matter of McEwan's phone call was not necessarily the property found in the Turner car. McEwan was talking about an unrelated time and place and about items taken to Ogden. Even if the phone conversation was relevant, it would be pure speculation to infer that Turner was on the other end of the line.

With such limited evidence to support Turner's convictions, we cannot say with any confidence, on the whole record, that the constitutional errors in this case were harmless beyond a reasonable doubt. *Rose v. Clark*, —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). *See State v. Velarde*, 734 P.2d 440, 47 Utah Adv.Rep. 3 (1986).

## III. FAILURE TO OBJECT AT TRIAL

 The presumption of innocence embodied in our concept of due process is at the heart of this case. The due process clause requires proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *State v. Walton*, 646 P.2d 689, 692 (Utah 1982). Although trial counsel for Turner failed to challenge the defective instructions, Turner has claimed a substantial and effective denial of due process on direct appeal.[3] The erroneous instructions did exclude Turner from due process. He has been sentenced to serve a total of 0 to 15 years in the Utah State Prison. The circumstances of this case are extraordinary, so we are compelled to correct the constitutional error and the consequences imposed on Turner, despite his lack of objection at trial. "Notwithstanding a party's failure to object, error may be assigned to instructions in order to avoid a manifest injustice." Utah R.Crim.P. 19(c). *State v. Lesley*, 672 P.2d 79, 81 (Utah 1983). *See State v. Cobo*, 90 Utah 89, 60 P.2d 952, 958 (1936).

Defendant's convictions are reversed, and the case is remanded for a new trial.

GREENWOOD, J., concurs.

DAVIDSON, J., concurs in the result only.

---

**3.** In contrast, the defendant in *Lopez v. Shulsen*, 716 P.2d 787 (Utah 1986), did not, on his direct appeal, question whether his jury's instructions complied with the standard required by the federal constitution. Instead, he attempted to assert the question later by petition treated as one for habeas corpus. On this basis, the Utah Supreme Court denied his petition, stating that "assertions of error that could have been raised on appeal cannot be raised by habeas corpus." *Id.* at 788.