*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2016 UT 52**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

KYLER NIELSEN,
*Appellant,*

*v.*

STATE OF UTAH,
*Appellee.*

No. 20140745
Filed November 18, 2016

On Certification from the Utah Court of Appeals

Fourth District, Provo Dep't
The Honorable David N. Mortensen
No. 131402457

Attorneys:
Margaret P. Lindsay, Douglas J. Thompson, Provo,
for appellant
Sean D. Reyes, Att'y Gen., John J. Nielsen, Salt Lake City,
for appellee

JUSTICE DURHAM authored the opinion of the court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE JOINED.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1    In this criminal case, the State claimed a privilege under rule 505 of the Utah Rules of Evidence to refuse to disclose the identity of a confidential informant. Rule 505 provides that if the State exercises this privilege in a case where the district court determines that there is a reasonable probability that the informant can give testimony necessary to a fair determination of the issue of the defendant's guilt or innocence, the court must dismiss the charges associated with this testimony.

¶2   We must decide in this appeal whether the district court applied the correct legal standard when it ruled that rule 505 did not require the dismissal of the charges against the defendant. Relying upon an opinion of this court that applied a prior version of the current rule 505, the district court used a three-factor balancing test. But the defendant argues that rule 505 required the court to consider only one factor: whether the confidential informant could provide testimony necessary to his defense.

¶3   We agree with the defendant that the district court applied the wrong legal test. The plain language of rule 505 requires the district court to consider only the necessity of the confidential informant's likely testimony to a fair determination of the guilt or innocence of the defendant. We therefore reverse and remand for further proceedings.

## BACKGROUND

¶4   A confidential informant told a Utah County officer that M.G. was selling the drug ecstasy and that she had plans to travel to a rave with friends. Based on this information, officers pulled over a vehicle driven by M.G. Kyler Nielsen was one of four passengers in the vehicle. Officers searched the vehicle and discovered ecstasy pills in the center console, in a cargo compartment behind one of the seats, and in a backpack located in the rear passenger compartment. Mr. Nielsen admitted that the backpack was his, but claimed that the ecstasy belonged to M.G. The State charged Mr. Nielsen with possession of a controlled substance.

¶5   Mr. Nielsen moved to compel the State to reveal the confidential informant's name, address, and telephone number, as well as other information about the informant. Invoking rule 505 of the Utah Rules of Evidence, the State opposed the motion to compel. Rule 505 grants the State the "privilege to refuse to disclose the identity of an informer," unless the informer's identity has already been disclosed or the informer appears as a government witness. UTAH R. EVID. 505(b), (d). But if the State invokes this privilege and there is a "reasonable probability" that the informer can "give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case," the district court "shall dismiss the charges to which the testimony would relate." UTAH R. EVID. 505(e)(1)–(2).

¶6   The district court elected under rule 505(e)(1) to conduct an *in camera* interview to determine whether the informant possessed knowledge relevant to Mr. Nielsen's guilt or innocence. But the interview never took place. An officer claimed that the informant

refused to participate in the interview because M.G. had threatened on social media that the informant would be hurt if discovered.

¶7   After the informant refused to appear, the district court concluded that rule 505 did not require it to dismiss the charges against Mr. Nielsen. Relying upon this court's opinions in *State v. Forshee*, 611 P.2d 1222 (Utah 1980) and *State v. Nielsen*, 727 P.2d 188 (Utah 1986), the court applied a three-factor balancing test, weighing (1) "the defendant's need for disclosure in order to prepare a defense," (2) "the potential safety hazards to the persons involved," and (3) "the public interest in preserving the flow of information from informants." *Nielsen*, 727 P.2d at 193. Considering the "totality of the circumstances" under these three factors, the district court concluded that rule 505 did not require a dismissal.

¶8   Mr. Nielsen went to trial and was convicted of possession of a controlled substance. He appeals, arguing that the district court's rule 505 ruling was erroneous.

## STANDARD OF REVIEW

¶9   In this appeal, we must decide whether the district court applied the correct legal standard when it found that rule 505 did not require it to dismiss the charges against Mr. Nielsen.[1] "We review the district court's decision de novo, according no deference to its legal determination." *State v. Steinly*, 2015 UT 15, ¶ 7, 345 P.3d 1182.

## ANALYSIS

¶10   The confidential informant privilege was first recognized in Utah in 1971, when this court adopted rule 36 of the Utah Rules of Evidence. This rule stated that "[a] witness ha[d] a privilege to refuse to disclose the identity of [an informant] . . . unless . . . disclosure of his identity is essential to assure a fair determination of the issues." UTAH R. EVID. 36 (1971). While rule 36 was in effect, we decided *Forshee*. In that case, relying on the U.S. Supreme Court case of *Roviaro v. United States*, 353 U.S. 53 (1957), we stated that the question of whether to compel disclosure was "based on a balancing of several factors, i.e., potential hazards to the safety of parties

---

[1] Mr. Nielsen also argues that even if the district court applied the correct test, it erred when it concluded that dismissal was not required. We do not address this argument because we determine that the district court applied the wrong test. Furthermore, we do not address whether the confidential informant's refusal to participate in the *in camera* interview affects the rule 505 analysis because this issue was never raised.

involved, the public interest in protecting the flow of information from informants, and the defendant's right to prepare his defense." *Forshee*, 611 P.2d at 1225.

¶11 In 1983, we removed rule 36 and all other privilege rules from the Utah Rules of Evidence. We adopted a new rule stating that "[p]rivilege is governed by the common law, except as modified by statute or court rule." UTAH R. EVID. 501 (1983). During this common-law period, we decided *Nielsen*, which cited *Forshee* for the proposition that "[t]he trial court must weigh several factors in determining whether to require disclosure: the defendant's need for disclosure in order to prepare a defense, the potential safety hazards to the persons involved, and the public interest in preserving the flow of information from informants." 727 P.2d at 193.

¶12 The common-law privilege period ended in 1992, when this court amended rule 501 to state that "no person shall have a privilege to withhold evidence except as provided by these or other rules adopted by the Utah Supreme Court or by existing statutory provisions not in conflict with them." UTAH R. EVID. 501 (1992). We also adopted several rules that describe the privileges acknowledged in this state, including rule 505, which lays out the confidential informant privilege. UTAH R. EVID. 505 (1992). We have not previously interpreted or applied this rule.

¶13 The current version of rule 505 gives the State "a privilege to refuse to disclose the identity of an informer." UTAH R. EVID. 505(b). But this privilege comes with an important caveat. In a criminal case, a judge must determine whether "there is reasonable probability" that the confidential informant can "give testimony necessary to a fair determination of the issue of guilt or innocence." UTAH R. EVID. 505(e)(1) –(2).[2] If the judge answers in the affirmative, the State is put to a choice. It can waive the privilege, or, if "the government elects not to disclose the informer's identity, the judge, on motion of the defendant in a criminal case, shall dismiss the charges to which the testimony would relate." UTAH R. EVID. 505(e)(2).

---

[2] Rule 505(e)(2) states the test for determining whether dismissal is required. It provides that if the State claims this privilege and "there is reasonable probability that the informer can give the testimony," the court shall dismiss the charges related to this testimony. Rule 505(e)(1) clarifies that the phrase "the testimony" refers to "testimony necessary to a fair determination of the issue of guilt or innocence."

¶14 Rule 505 places a single condition on the unfettered exercise of the confidential informant privilege: the absence of a reasonable probability that the confidential informant can give testimony essential to a determination of the defendant's guilt or innocence. Mr. Nielsen argues that district courts should follow the plain language of rule 505 and evaluate only whether this condition has been met. Thus, he asserts that the district court applied the wrong legal standard when it employed the *Forshee* three-factor balancing test to determine whether it had an obligation to dismiss the charges against him.

¶15 The State, on the other hand, argues that the trial court applied the correct legal standard when it used the *Forshee* balancing test. It contends that, in addition to the plain language of rule 505, courts should also weigh "potential hazards to the safety of parties involved" and "the public interest in protecting the flow of information from informants" when deciding whether the rule requires dismissal. *See Forshee*, 611 P.2d at 1225. The State argues that although *Forshee* interpreted a previous version of the confidential informant rule, it remains binding authority that controls the proper interpretation of rule 505.

¶16 The State first contends that the advisory committee note to rule 505 incorporates the *Forshee* balancing test. The language cited by the State, however, provides no guidance on this question. The advisory committee note states:

> Rule 505 incorporates the concept reflected in *Roviaro v. United States*, 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623 (1957), that the government has a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with the enforcement of that law." The Utah Supreme Court adopted the *Roviaro* approach in *State v. Forshee*, 611 P.2d 1222 (Utah 1980).

UTAH R. EVID. 505, advisory committee's note to 2011 amendment. This portion of the note merely traces some of the history of the confidential informant privilege. It does not counteract the plain language of rule 505 that describes the conditions under which the State's use of the privilege requires a dismissal.

¶17 In fact, another section of the advisory committee note confirms that the relevant test is located in the rule itself. The note later states: "Subparagraph (d)(1) sets forth the test to be applied by the court in determining whether to allow the privilege or to require the government to elect to disclose the identity of the informer or to

dismiss, in a criminal case." *Id.* After the advisory committee note was written, rule 505 was revised such that the language from former subparagraph (d)(1) was renumbered as subparagraph (e). *Compare* UTAH R. EVID. 505(e) *with* UTAH R. EVID. 505(d)(1) (1992). Thus, the note affirms that the applicable legal standard is laid out in the language of subpart (e) of the current rule.

¶18 Next, the State argues that because some of the language from the former rule 36 appears in the current rule 505, the *Forshee* balancing test was "transplanted" into the new rule. In support of this contention, the State cites the interpretive rule of thumb that "[w]hen a word or phrase is 'transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'" *Winward v. State*, 2015 UT 61, ¶ 12, 355 P.3d 1022 (citation omitted). In other words, "[w]hen the legislature [or this court] 'borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken.'" *Maxfield v. Herbert*, 2012 UT 44, ¶ 31, 284 P.3d 647 (citation omitted). The State contends that similarities between the phrase "essential to assure a fair determination of the issues" in the old rule 36 and the phrase "necessary to a fair determination of the issue of guilt or innocence" in the current rule 505(e)(1) signal an intent to import the *Forshee* gloss on rule 36 into rule 505.

¶19 The State's argument is flawed. Using *Forshee* as a source of meaning for rule 505(e)(1) is problematic on several grounds. First, *Forshee* did not tie its three-factor balancing test to an interpretation of the language of rule 36. *Forshee* simply pronounced the balancing test; it did not anchor it in the text of the rule. 611 P.2d at 1224–25. Thus, there is no interpretation attached to a particular word or phrase in rule 36 to be carried forward. No "old soil" was fastened to the words of rule 36 that could be transplanted into rule 505. *See Winward*, 2015 UT 61, ¶ 12. In fact, the arguable "old soil" in question was the *Roviaro* standard, cited with favor in *Forshee* and referenced again by the current advisory committee note to rule 505.

¶20 We conclude that *Forshee*, while purporting to rely on *Roviaro* in adding safety and public interest factors to its balancing test, actually strayed from *Roviaro*'s holding and standard. The court in *Roviaro* clearly says:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and

helpful to the defense of an accused, or is essential to a
fair determination of a cause, the privilege must give
way.

353 U.S. at 60–61. Even the dissent in *Roviaro* agreed that "[o]f course
where enforcement of a non-disclosure policy deprives an accused
of a fair trial it must either be relaxed or the prosecution must be
foregone." *Id.* at 67 (Clark, J., dissenting).

¶21 *Forshee* thus misinterpreted *Roviaro*. The language of rule 36
actually adopted *Roviaro*'s framework. The rule's use of "essential to
assure a fair determination of the issues," UTAH R. EVID. 36 (1971),
closely tracks *Roviaro*'s "essential to a fair determination of a cause."
353 U.S. at 61. It also tracks *Roviaro* in not allowing the privilege
when "the identity of the person furnishing the information has
already been otherwise disclosed." UTAH R. EVID. 36 (1971). In fact,
*Forshee* even recognized that the rule 36 privilege "closely resembles
the scope of the privilege set forth in [*Roviaro*]." 611 P.2d at 1224. But
the court in *Forshee* went astray when it added additional factors, not
part of the rule's language or the *Roviaro* analysis. This confused the
law for a time, and we acknowledge that the trial judge in this case
was understandably misled. Rule 505 once again tracks *Roviaro*, not
*Forshee*'s multi-factor gloss. Thus, *Forshee* misconstrued rule 36 itself,
and the plain language in rule 505 now restores the proper scope of
the analysis.

## CONCLUSION

¶22 We reverse Mr. Nielsen's conviction and remand for further
proceedings. On remand, the trial court must conduct proceedings
consistent with rule 505, which we read to require that, once the
government invokes the privilege, the court must make a
determination of whether "an informer may be able to give
testimony necessary to a fair determination of the issue of guilt or
innocence in a criminal case." UTAH R. EVID. 505(e)(1). Relying on the
"evidence in the case" and any "showing by a party," "the judge
may give the government an opportunity to show in camera facts
relevant to determining whether the informer can, in fact, supply the
testimony." *Id.* UTAH R. EVID. 505(e)(1). If the district court ultimately
decides that rule 505(e)(2) permits dismissal because "there is
reasonable probability that the informer can give the testimony," the
State can waive the confidential informant privilege and retry Mr.
Nielsen, or the State can choose to assert the privilege. If the
privilege is asserted, then the judge can either dismiss the charge
against Nielsen upon a motion from the defense, or, at the judge's
discretion, "dismiss the charges on the judge's own motion." *Id.*